**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

GREGORY K. ALLEN, JR. (# 164049)                                    PLAINTIFF

v.                                                          No. 4:20CV106-JMV

M.S.P. WARDEN SIMON, ET AL.                                        DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on Defendants' Corrections Officer Terry Haywood and

Warden Lee Simon motion [40] for summary judgment. The plaintiff ,Gregory K. Allen, Jr., (Allen)

has not responded to the motion, and the deadline to do so has expired. The matter is ripe for

resolution. For the reasons set forth below, the motion [40] for summary judgment will be granted,

and judgment will be entered for the remaining defendants.[1]

In this case, the *pro se* prisoner challenges the conditions of his confinement under 42 U.S.C.

§ 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was

incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983,

which provides a federal cause of action against "[e]very person" who under color of state authority

causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

42 U.S.C. § 1983. The plaintiff alleges that he was sexually assaulted by his cellmate and prevented

---

[1] Nurse Brown, the only other remaining defendant named, has not joined in the instant motion for summary judgment or filed one of her own. However, the plaintiff's allegations involve her in only the following claims: (1) failure to follow MDOC policy and the requirements of PREA; and (2) insufficient investigation. As these two claims will be dismissed, Nurse Brown will also be dismissed with prejudice as a defendant. *See* Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may … grant summary judgment for a nonmovant[.]") In this case, the plaintiff had notice that these two claims were ripe for consideration during summary judgment, and he failed to respond to the instant motion by the deadline. He thus had notice and a reasonable time to respond.

from seeking help for three days. In addition, he alleges that the investigation into the assault was ineffective, he was not placed in segregation following it, and the investigators and staff failed to follow Mississippi Department of Corrections policy or the requirements of the Prison Rape Elimination Act of 2003. Further, Allen alleges that the prison medical staff did not collect DNA samples or process a rape kit; nor was the plaintiff taken to an outside medical facility for examination. Finally, the plaintiff alleges that the defendants did not offer for him to seek criminal charges against the alleged attacker, and the investigators did not believe that the plaintiff had been sexually assaulted.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

- 2 -

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings. Rather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id*. The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some

- 3 -

metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356, "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."

### Undisputed Material Facts[2]

At the time of filing his complaint and at all relevant times, the plaintiff was an inmate in the custody of the Mississippi Department of Corrections ("MDOC") and incarcerated at the Mississippi State Penitentiary ("MSP") in Parchman, Mississippi. Doc. at 6 (CM/ECF Pagination). He is currently housed at Wilkinson County Correctional Facility. *Id*. at 1.

Allen alleges that in January and February of 2019 he was housed with a cellmate named "D. Ellis" in MSP's Unit 29 G. Doc. [1] at 6. He alleges that Ellis physically and mentally abused him. *Id*. During this time, Allen claims he was unable to notify prison officials of the danger because Ellis used other prisoners and defendant Corrections Officer Terry Haywood to watch him and prevent him from seeking help. *Id*. at 8. Eventually, Allen jammed the door mechanism to his cell when Ellis was working elsewhere in the prison and was able to tell a responding guard named either Wells or Webb that he needed help. *Id.* at 8-9. The guard left to seek help, and Ellis returned. *Id.* A struggle ensued as Ellis attempted to enter the cell, during which Allen claims that Ellis simultaneously: used a tool to unjam the lock, knocked down the clotheslines in the cell with a broomstick, and threw cups of

---

[2] For the purposes of the instant memorandum opinion, the court will assume that the plaintiff's allegations are true.

boiling water at him to keep him at bay while Ellis unjammed the lock. *Id*. at 9. Ellis then told the zone guards that Allen was on drugs, and a guard named McKenelly arrived. *Id*. Allen told Sgt. Wells/Webb and Sgt. McKenelly that he feared Ellis might kill him. *Id*. at 9-10. McKenelly nonetheless unlocked the cell door and returned Ellis to Allen's cell. *Id*. at 10. Allen claims that Ellis then raped him at knifepoint. *Id*. at 10. He also claims that Ellis had CO Haywood and some inmates watch him so he could not seek help for three days. *Id*. at 11.

Several days later Allen injured himself while playing basketball. He was then able to get to the medical unit, where he informed medical personnel that he had been raped. *Id*. at 11. Nurse Practitioner Brown visually examined him to see if he had been sexually assaulted. *Id*. at 12. As a result of the exam, Nurse Brown did not believe that Allen had been raped, did not collect physical evidence, did not take him to an outside facility for examination, and did not perform testing for sexually transmitted diseases. *Id*.

After the exam, Allen met with defendant Warden Simon and Unit 29 Captain Jones. *Id*. at 13. Allen claims that they also did not believe him and told him that they believed the sexual encounter between him and Ellis was consensual. *Id*. Nonetheless, after the meeting, Allen was transferred away from Ellis, provided mental health care, and met with PREA investigators (PREA Manager Lt. Lola Nelson, Unit 29 Warden Timothy Morris, and Warden Simon.) *Id*. at 15-16. None of them believed that he had been raped. *Id*. They variously told him that he was lying, that the encounter was consensual, that it was his fault, and that he would likely be assaulted for reporting Ellis. *Id*. As for mental health care, Allen ultimately decided that he would be better off helping himself. *Id*. at 15. No one offered to assist him in filing criminal charges against Ellis (though the plaintiff does not allege that he requested to file criminal charges). *Id*. at 18. Allen seeks compensatory and punitive damages. Doc. [1] at 21.

## The Plaintiff's Claims

The plaintiff identifies four claims arising out of his allegations: (1) Failure to protect him from attack; (2) Failure to conduct an adequate investigation; (3) Failure to follow MDOC and PREA procedures; and (4) Failure to offer him the chance to pursue criminal charges against his attacker. As discussed below, none of these allegations state a valid claim for relief under 42 U.S.C. § 1983.

### Failure to Protect Against the Attack of Inmate Ellis and
### Failure to Take Steps to Prevent a Second Attack

The plaintiff alleges that defendant Haywood failed to protect him from the attack of inmate Ellis – and that defendant Simon failed to take steps to prevent another attack. Allen alleges that, just before the attack, he asked Sgt. Wells/Webb and Sgt. McKenelly[3] to keep Ellis away from him because he feared for his life. Doc. 1 at 10. Neither heeded his request, and McKenelly placed Ellis in the cell with Allen. *Id*. Later, the plaintiff alleges that, after Ellis had sexually assaulted him, "other offenders and staff" kept him under observation and thus prevented him from seeking assistance.[4] Doc. 1 at 11.

Based on these allegations, Allen claims that, after the initial rape at knifepoint, defendant Haywood failed to protect him from continuing assault by inmate Ellis by keeping Allen "under observation." "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). Deliberate

---

[3] The court dismissed these two defendants earlier in the case for inability to effect service of process upon them. Doc. 39.

[4] Mr. Allen identified defendant CO Terry Haywood as a staff member keeping him "under observation" *before* the alleged sexual assault, but it is unclear in the complaint whether the plaintiff alleges that Haywood kept him "under observation" *after* the alleged assault. The court will construe the complaint liberally as alleging that CO Haywood kept the plaintiff "under observation" both before and after the alleged assault. *See Haines v. Kerner*, 404 U.S. 519 (1972) (courts must construe *pro se* pleadings liberally).

indifference "[is] the proper standard to apply in the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). To prove that a prison official showed deliberate indifference, a prisoner plaintiff must show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety;" indeed, the official must have been aware of facts giving rise to an inference that a substantial risk of serious harm existed – and he must have drawn that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). An inmate pursuing a claim for failure to protect may prove his claim by showing that the defendants knew of a specific threat to him but failed to take measures to protect from it. *Id.* at 843.

The only remaining defendant arguably involved in the failure-to-protect claim is Corrections Officer Haywood, as part of the "offenders and staff" who allegedly had Allen under observation after the attack. Doc. 1 at 11. Allen has not, however, alleged how CO Haywood actually prevented him from seeking help; nor does Allen allege that he actually attempted to seek help during the three days before he was taken to medical (because of an injury he suffered playing basketball during recreation). Neither has Allen alleged that CO Haywood (or anyone else) thwarted such an attempt – or even warned him not to seek help. Allen was obviously not confined to his cell during those three days, as evidenced by his ability to leave his cell to play basketball. The plaintiff has alleged only that, during the three days following the alleged attack, Haywood and others (inmates and staff) had him "under observation." Certainly, CO Haywood's observation of the plaintiff does not rise to the level of deliberate indifference, as it does not show that "[Haywood] [knew] of and disregard[ed] an excessive risk to inmate health or safety." *See Farmer, supra.*

The act of observing simply does not give rise to a claim for failure to protect. During summary judgment, the non-movant cannot support his position with "some metaphysical doubt

- 7 -

as to the material facts," "conclusory allegations," "unsubstantiated assertions," or by a mere "scintilla" of evidence. *Matsushita*, *Lujan*, *Hopper*, and *Davis, supra*. Allen offers no facts to support his allegations that defendant Haywood failed to protect him, and the court must grant summary judgment in CO Haywood's favor.

Allen also argues that defendant Warden Simon failed to take steps after the alleged rape to ensure that Allen was not assaulted a second time by placing him in segregation and housing him away from his alleged attacker. However, the plaintiff's allegations show that Warden Simon *did* take such steps. Allen was, in fact, moved to segregated housing, as he acknowledges in his complaint. Doc. 1 at 14. In addition, whether prison staff issued a "keep separate order" or not, Allen has not alleged that prison officials housed him with – or otherwise exposed him to – his assailant after he reported the rape. Hence, Warden Simon was not deliberately indifferent to Allen's health or safety, and these claims will be dismissed.

**Insufficient Investigation**

The plaintiff alleges that Nurse Brown and Warden Simon failed to conduct a proper investigation into his allegation of rape, which the plaintiff claims is a violation of his right to due process. The plaintiff does not have a federally protected liberty interest in having an inmate assault investigated to his satisfaction. *Cf. Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir.2005) (per curiam) (prisoner did not have liberty interest protected by Due Process in having grievance regarding mishandling and loss of his mail investigated to his satisfaction). A plaintiff's allegations regarding failure to investigate an assault fail to state a valid claim for relief under 42 U.S.C. § 1983 unless they implicate a constitutional right. *See, e.g., Andrews v. Fowler,* 98 F.3d 1069, 1079 (8th Cir.1996) (police chief was not individually liable, under § 1983, to claimant raped by police officer based on police chief's failure to investigate rape, which did not state a separate

constitutional violation); *Burchett v. Self*, 30 F.3d 133, 1994 WL 276865, *2 (6th Cir.1994) (unpublished) (failure to investigate does not raise a constitutional claim); *Scher v. Chief Postal Inspector,* 973 F.2d 682, 683-84 (8th Cir. 1992) (inmates failed to state *Bivens* claim based on refusal of post office employees to investigate complaint regarding prison administrators' handling of their mail); *Gomez v. Whitney,* 757 F.2d 1005, 1006 (9th Cir.1985) (lack of police investigation, by itself, was not a deprivation of a constitutional right); *Malloy v. City of New York,* 1996 WL 648927, *2 (S.D.N.Y. Nov 07, 1996) (unpublished)(there is no constitutional right to an investigation or arrest of an individual who has committed an assault upon a prisoner – unless the omission or inadequacy of the investigation itself resulted in a deprivation of a constitutional right, such as equal protection of the law).

In the present case, prison staff investigated Allen's allegations, but they did not believe him, and Nurse Practitioner Brown's visual inspection did not support his claims. Prison staff nonetheless transferred Allen away from Ellis, placed Allen in segregation, provided him mental health care, and arranged a meeting with PREA investigators (who also did not believe him). Thus, the investigation occurred, but did not conclude in the way Mr. Allen believed it should. As the failure to conduct any investigation at all fails to state a claim, conducting an allegedly "inadequate" investigation *also* fails to state a claim. These allegations do not rise to the level of a due process violation and must be dismissed for failure to state a claim upon which relief could be granted.

### Failure to Follow MDOC and PREA Procedures

The plaintiff argues that defendants Nurse Brown and Warden Simon are liable to him for failure to follow the requirements of the Prison Rape Elimination Act of 2003 ("PREA"). PREA does not, however, create a private cause of action against prison officials for non-compliance with the Act. *See Krieg v. Steele*, 599 Fed. Appx. 231 (5th Cir. 2015) *citing Simmon v. Solozano* 2014 WL 4627278;

*see also Montgomery v. Harper*, No. 5:14CV–P38–R, 2014 WL 4104163, at *3 (W.D.Ky. Aug. 19, 2014) ("[T]his Court concludes that the PREA creates no private right of action."); *Chapman v. Willis*, No. 7:12–CV–00389, 2013 WL 2322947, at *4 (W.D.Va. May 28, 2013) ("There is no basis in law for a private cause of action to enforce a PREA violation."); *Holloway v. Dep't of Corr.*, No. 3:11VCV1290(VLB), 2013 WL 628648, at *2 (D.Conn. Feb. 20, 2013) ("There is nothing in the PREA that suggests that Congress intended it to create a private right of action for inmates to sue prison officials for non-compliance to the Act.")  For this reason, the plaintiff's allegations regarding failure to follow the requirements of PREA must be dismissed for failure to state a claim upon which relief could be granted.

Similarly, a prison may not be held liable under 42 U.S.C. § 1983 solely for failure to follow its own procedures:

> [A] prison official's failure to follow the prison's own ... regulations does not constitute a [constitutional] violation.

*Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam)).  Thus, the plaintiff's allegations regarding failure to follow MDOC procedures must also be dismissed for failure to state a claim upon which relief could be granted.

### Denial of Access to the Courts by Failure to Offer the Chance to File Criminal Charges Against Inmate Ellis

Allen alleges that Warden Simon did not offer him "the chance … to pursue criminal charges against Ellis…."  Doc. 1 at 18.  In this allegation it appears that Allen claims that the failure to ask him whether he wished to pursue criminal charges constituted a denial of access to the courts.  Prisoners possess a constitutional right of access to courts, including having the "ability . . . to prepare and transmit a necessary legal document to court."  *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996), quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993), *cert. denied*, 510 U.S. 1123 (1994).

"Interference with a prisoner's right to access to the courts, such as delay, may result in a constitutional deprivation." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citations omitted).

However, "[a] denial-of-access-to-the-courts claim is not valid if a litigant's position is not prejudiced by the alleged violation." *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992), *cert. denied,* 504 U.S. 988 (1992), citing *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). It is only when a prisoner suffers some sort of actual prejudice or detriment from denial of access to the courts that the allegation becomes one of constitutional magnitude. *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *see Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). To prove his claim, a plaintiff must show real detriment – a true denial of access – such as the loss of a motion, the loss of a right to commence, prosecute or appeal in a court, or substantial delay in obtaining a judicial determination in a proceeding. *See Oaks v. Wainwright*, 430 F.2d 241 (5th Cir. 1970).

In this case, the plaintiff has not alleged that he is unable to pursue criminal charges on his own by swearing out a criminal complaint against Ellis. As such, he has shown neither a lack of access to the courts nor prejudice to his legal position. Hence, his allegations regarding failure to offer him the chance to seek criminal charges against Ellis must be dismissed for failure to state a claim upon which relief could be granted.

**Supervisor Liability**

Allen's complaint describes a list of actions he believes Warden Lee Simon should have taken after Allen reported the rape. Allen believes that defendant Simon should have ensured that staff: (1) entered a "keep separate" order into his file, (2) moved him to segregated housing, (3) carried out a proper rape investigation, and (4) followed MDOC and PREA policies "by the book." Doc. [1] at 14. All of these actions are supervisory in nature.

- 11 -

The plaintiff's allegations fail to state a valid § 1983 claim against defendant Warden Simon regarding his role as a supervisor. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007).

There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

The plaintiff alleges that defendant Warden Simon should have ensured that staff placed him in segregation, conducted a better rape investigation, followed MDOC procedures and PREA guidelines – and generally should have better supervised his subordinates. In this case, the plaintiff does not allege that Warden Simon had any personal involvement or was causally connected to the incident; nor has the plaintiff identified a prison policy attributable to Warden Simon that caused the incident to occur. As such, the instant claim based upon supervisor liability must be dismissed for

failure to state a constitutional question.

## Qualified Immunity

The defendants also argue that they are cloaked with qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836–37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836–37. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As discussed in detail above, the remaining defendants took appropriate action after Allen reported the rape. CO Haywood merely kept the plaintiff "under observation." Nurse Brown examined him and reported the incident to the PREA coordinator. Warden Simon took part in the PREA investigation and ensured that the plaintiff was moved to segregation, then to housing separate from his alleged attacker. These actions do not show that the defendants were "plainly incompetent"

- 13 -

or "knowingly violate[d] the law." *Malley, supra*. As such, judgment will be entered in favor of defendants Nurse Practitioner Brown, Warden lee Simon, and Corrections Officer Terry Haywood, as they are cloaked in qualified immunity.

**Conclusion**

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and judgment will be entered in favor of Nurse Brown, Corrections Officer Haywood, and Warden Simon. There are no genuine issues of material fact; the plaintiff has not stated a valid § 1983 claim for which relief could be granted, and the remaining defendants are cloaked with qualified immunity. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 7th day of February, 2022.

/s/   Jane M. Virden
UNITED STATES MAGISTRATE JUDGE